**BURLINGTON MILLS CORPORATION y.
ROY FABRICS, Inc., et al.**

United States District Court
S. D. New York.

May 17, 1950.

Lauterstein & Lauterstein, New York City(Leon Lauterstein, Jacob L. Isaacs, New York City, of counsel), for plaintiff.

Kadel & Wilson, New York City (John Kadel, Abraham Wilson, New York City, of counsel), for defendants.

CONGER, Justice.

This is a motion by the plaintiff pursuant to Rule 65 of the Federal Rules of

Civil Procedure, 28 U.S.C.A., for a preliminary injunction restraining the defendants, their agents, servants, employees, etc. as follows:

"a. From using the names 'Burlington Mills', 'Burlington' and 'Bur-Mil' and any other trademark or trade name of plaintiff in connection with the display, offering for sale or sale of any goods or fabrics not produced by plaintiff.

"b. From using any name or title resembling that of the plaintiff or any title which may be calculated or have the tendency to mislead or deceive any person, firm or corporation, or the public, into believing that goods displayed, offered for sale or sold by the defendants which are not produced by plaintiff are or have been produced by plaintiff.

"c. From advising, soliciting, or encouraging any person, firm or corporation to use the names 'Burlington Mills', 'Burlington' and 'Bur-Mil' or any trademark or trade name of plaintiff in connection with advertising, promoting, publicizing, displaying, offering for sale or selling and fabrics not produced by plaintiff.

"d. From representation by words, conduct or actions that goods manufactured by plaintiff and sold as 'seconds' are first quality 'Burlington' fabrics, and from attempting to remove imperfections from fabrics sold by plaintiff as 'seconds' and reselling the same as first quality 'Burlington' fabrics.

"e. From failing to clearly state on all invoices issued or caused to be issued by defendants that all fabrics bought by defendants of plaintiff's manufacture are 'seconds', where such fabrics are purchased by defendants as 'seconds', or are in fact 'seconds', or have been cut from piece goods purchased as, or which in fact are, 'seconds.'

"f. From representing, by words, conduct or actions, that Roy Fabrics, Inc. has any preferential price arrangement with plaintiff.

"g. From representing, by words, conduct or actions, that Roy Fabrics, Inc. is an authorized outlet or agency of, or sponsored by, plaintiff for the sale of plaintiff's goods.

"h. From using the name 'Burlington' or any of the plaintiff's trademarks or trade names in connection with any goods sold by defendants."

The plaintiff, a Delaware corporation, is engaged in the production, sale and distribution of great varieties of textile products in substantial volume. The defendant, a New York corporation, is engaged in the business of fabrics jobber, purchasing fabrics from various mills and reselling the same to retail stores for ultimate sale to the general public. The individual defendants are the president and secretary-treasurer of the defendant corporation.

The complaint sets forth two claims for relief; the first one based upon the defendants' alleged wrongful appropriation, exploitation, misuse and abuse of the plaintiff's trade names and trademarks "Burlington Mills", "Burlington", "Bur-Mil" and other trade names and trademarks by various acts of unfair competition including:

"a. Passing off non 'Burlington' fabrics to various retail establishments and others as 'Burlington' fabrics, and encouraging and advising various of said retail establishments to advertise said non 'Burlington' fabrics as 'Burlington' fabrics.

"b. Purchasing fabrics from plaintiff which were classified and sold as 'seconds', and passing off such 'seconds' to various retail establishments and others as 'Burlington' 'first' quality fabrics.

"c. Purchasing fabrics from plaintiff, which were classified and sold by plaintiff as 'second' quality merchandise, and without adequate facilities or skill, attempting to remove the imperfections contained in such 'seconds' and reselling such 'seconds' as 'first' quality 'Burlington' fabrics.

"d. Creating the false impression in the trade that defendants were an exclusive authorized outlet, distributor or agency, sponsored by the plaintiff for the sale of its goods, and the further false impression that defendants had a special preferential price arrangement with plaintiff whereby defend-

ants could procure regular 'first' quality fabrics from plaintiff at less than the normal prevailing market price therefor, and thus resell said goods at less than the normal prevailing market price.

"e. Breaching an agreement between the plaintiff and defendants under which defendants stipulated not to use the Burlington name in any connection with the sale of the latter's goods."

The complaint alleges that as a result of defendants' acts, members of the fabrics trade and the purchasing public have been deceived by defendants into purchasing fabrics which were not Burlington fabrics nor Burlington "first" quality fabrics, but were "seconds"; that defendants have unlawfully diverted from plaintiff sales of large quantities of fabrics with consequent loss of substantial revenue to plaintiff; that defendants have seriously impaired the business relations between plaintiff and its customers; that the defendants have appropriated plaintiff's valuable property rights in its trade names, trademarks and good will, and have caused and threaten to continue to cause serious and irreparable harm to the plaintiff and to its good will and business, for which plaintiff has no adequate remedy at law.

The second claim for relief alleges that the defendants' acts constitute an application and use by defendants of false descriptions and false representations in connection with goods in commerce in violation of Section 43 of the Act of July 5, 1946, Lanham Act, 15 U.S.C.A. § 1125.

The plaintiff seeks a permanent injunction, damages in the amount of $350,000 and an accounting.

The defendants have answered, generally denying the allegations of the complaint and interposing certain special defenses.

It appears that commencing on or about the latter part of 1947, the plaintiff, through various of its divisions, sold certain merchandise to the defendants. With the exception of a few orders placed by the latter in the early part of 1948 for resale at the defendant corporation's retail establishment and a small quantity of "close outs", the fabrics purchased by the defendant corporation from the plaintiff were "second" quality merchandise, sold as such by the plaintiff. These sales have amounted to approximately $500,000. Since June, 1949 no orders have been taken from the defendant corporation by the plaintiff and all shipments on previous orders ceased at that time.

In support of its application for a preliminary injunction the plaintiff has submitted numerous affidavits and exhibits.

Officers and employees of the plaintiff relate that information came to them in or about October, 1948 that fabrics sold by the plaintiff to defendants as "seconds" had been sold as "first" quality merchandise; that the defendants attempted to justify these acts by the claim that they had cut out the imperfections and had sold only that part of the goods which did not contain the imperfections; that the defendants had made other misrepresentations in connection with the sales of Burlington fabrics and had misused the Burlington name; that this information came from representatives of retailers who were complaining about sales of Burlington fabrics at low prices by their competitors.

On November 20 and 27, 1949, Lansburgh & Bro., a Washington, D. C., department store inserted advertisements in a Washington newspaper offering for sales various Burlington fabrics at a price below the normal wholesale price at which Burlington sells the general type of such goods to department stores. An investigation was conducted and an examination of the fabrics revealed them largely not to be of Burlington manufacture. A suit was instituted against Lansburgh & Bro. and the latter claimed that the goods had been purchased from the defendant corporation under the representations that all such goods were Burlington fabrics and could be so advertised. Affidavits from the fabrics buyer, assistant fabrics buyer and the fabrics consultant of Lansburgh & Bro. support the charge that the defendant Sussman represented that the goods were Burlington fabrics. When the Lansburgh people raised some question about the true origin of the

goods, the defendant Halper, assured them that, with the exception of one item, they were all Burlington fabrics. The plaintiff asserts that the defendants deliberately misrepresented the goods.

In the Fall of 1948 and extending through the Spring of 1949, on various occasions a number of retail fabric buyers, including buyers in the New York offices of the Associated Merchandising Association, The Cavendish Trading Corporation and the National Department Stores complained to officials of the plaintiff that the defendants were selling as "first" quality Burlington fabrics various rayon print piece goods at a price of 30% to 40% less than that at which Burlington was offering its regular rayon prints to them. Actually, the goods were "seconds." Similar reports came from Kaufman's Department Store of Pittsburgh, the Famous Barr Company of St. Louis, May Company in Cleveland, and others. It was further reported that defendant Sussman had been visiting various retail stores and representing that he had some special inside connection with the Burlington officials which enabled the defendant corporation to procure an unlimited supply of Burlington first quality merchandise for resale at a price lower than that charged by the plaintiff. Plaintiff's affidavits show that in fact this was untrue.

On May 10, 1949, an order was issued by Mr. Louis Lazare, a vice-president of the Burlington Mills Corporation to discontinue further sales to the defendant corporation. Shortly thereafter a discussion was had with defendants Sussman and Halper who urged a resumption of sales to them. The nature of the complaints against them was related and they denied such activity but stated that frequently buyers inquired as to whether particular fabrics being displayed were "Silduka" or "San Chu" or "Market Square" (Burlington trade names), and they responded that such case was possible. They stated that they were not responsible for inferences gained by the buyers from such remarks. They promised, however, that there would be no recurrence of the acts and that if Burlington would continue selling them merchandise, they would agree, in order to avoid any possible abuse or misuse of the Burlington name, not to use any of the Burlington trade names or trademarks in connection with the sale by them of any goods whatsoever. Under these circumstances a resumption of the sales was permitted.

Within ten days after these events, the plaintiff received a complaint from a buyer for the J. L. Hudson Company, a Detroit department store, who reported that defendant Sussman had just visited the J. L. Hudson store, represented himself as an agent for the sale of Burlington fabrics, stated he had access to Burlington first quality fabrics and could undersell Burlington, quoting prices, and mentioning many well known Burlington fabrics. Mr. Hanley of Burlington called Mr. Sussman about the report and the latter stated that they were merely casual remarks made in a few brief moments while he was waiting for train connections. Mr. Lazare again ordered sales to the defendant corporation to cease in June, 1949, and no dealings have been had since that time.

In August, 1949, Miss L. Ingle, a dress fabrics buyer for Burdine's store in Miami, Florida visited Mr. Hanley and informed him that a salesman for the defendant corporation had represented to her that he was selling exclusively Burlington fabrics, and she wished verification. Mr. Hanley informed her of the truth about the matter and suggested that she, in company with one of the plaintiff's salesmen, a Mr. John C. Fesen, visit the establishment of the defendant corporation which suggestion was accepted. While there Mr. Sussman displayed various fabrics which he described by Burlington trade names; he assured Miss Ingle that his firm had unlimited access to Burlington fabrics and could assure her continuity of orders and fill-ins. In response to her inquiry as to whether the fabrics could be advertised as Burlington fabrics, Mr. Sussman suggested that she commingle the fabrics with regular Burlington fabrics then in stock and promote the whole thereof as Burlington fabrics. Mr. Sussman further assured her that 99% of the fabrics being sold by his firm were Burlington fabrics. The Burlington salesman in his affidavit states that, although he made only a

cursory examination, one or two of the products displayed were not of Burlington manufacture.

After the Lansburgh & Bro. incident, Mr. Hanley received complaints from two stores in Washington inquiring as to how Lansburgh & Bro. could sell Burlington goods at such low prices. Most of the facts set forth above concerning the activities of the defendants are found in the affidavits of Burlington officials and employees.

However, affidavits confirming most of the charges against the defendants are included in the supporting affidavits of persons in no way connected with plaintiff. Aside from the Lansburgh employees, there are affidavits from Jesse W. Wall, fabrics buyer for the Yowell-Drew-Ivey Co. of Orlando, Florida, Augusta G. Curry, fabrics buyer for the Denver Dry Goods Company of Denver, Colorado, Donald Dickson Shaw, resident buyer of textile piece goods for the Cavendish Trading Corporation of New York, which company represents many large stores throughout the country for the purchase of fabrics, James Gorman McKenzie, assistant buyer of the J. L. Hudson Company of Detroit, Max Bogart, buyer for the Davidson-Paxon Company of Atlanta and Ira H. Osborne, divisional merchandise manager of the Elder and Johnston Company.

I believe I have fairly summarized the facts upon which the plaintiff bases its charges that the defendants have been passing off other fabrics as Burlington fabrics and of advising, encouraging and abetting the false advertisement of such goods by retail stores; have been passing off Burlington "seconds" as Burlington "firsts"; and have held themselves out as an authorized outlet, agent or distributor, and sponsored by the plaintiff, and as having some preferential price arrangement with the plaintiff.

The defendants have filed various affidavits and exhibits in opposition to the motion.

Roy K. Halper, the president and Benjamin Sussman, the secretary-treasurer deny the charges asserted against them and their firm.

They state that it is a well known fact throughout the trade that the plaintiff sold large quantities of its fabrics to the corporate defendant and that there was no mystery nor secret about the large purchases of "seconds" made by Roy Fabrics, Inc. from plaintiff; that practically every department store or chain store buyer in the United States knew that Roy Fabrics, Inc. bought huge quantities of Burlington products, and reprocessed and sold such goods.

They assert that the piece goods market is highly competitive; that buyers are constantly shopping for bargains; and that buyers know that they are not buying goods from jobbers in their original form; that the jobber attempts to remove imperfections from "seconds" and save a substantial part of the goods as first quality.

Mr. Halper states that he never told anyone at Burlington that he would desist from reprocessing "seconds" nor did Mr. Sussman. He states that he never told a buyer nor anyone else that the defendants are authorized agents, nor have the defendants traded on plaintiff's name or trademark or trade names. When goods are purchased by Roy Fabrics, Inc. all sellers' identification marks, numbers and tags are removed and new numbers are assigned and the goods are commingled with those of other manufacturers of the same class. Roy Fabrics, Inc. prepares its own price list which makes no reference to any manufacturer.

Defendants also point out that none of the written orders for goods or invoices contain plaintiff's name or the trade name of any of its goods; that all goods were ordered and shipped under defendants' name and order numbers. This is not a convincing answer. The gravamen of the complaint is that before the ordering and the shipping they were represented to be plaintiff's goods and with no explanation that they had been purchased as "seconds" from plaintiff. The alleged wrong was done by word of mouth and not by documents.

Mr. Halper cites an example of its methods in connection with a sale to Blooming-

dale Bros., Inc. which ordered goods from Roy Fabrics using Burlington trade names on its order blank. Instead of sending Burlington goods which it may or may not have had, Roy Fabrics sent goods from its shelves which may or may not have been of Burlington manufacture. On receipt of the goods, Bloomingdale rejected them because they were not Burlington goods as ordered by it. As Mr. Halper states: "The most natural thing in the world for the defendants to have done if they were conducting business in the manner charged by plaintiff would have been to acknowledge the order as it was written by Bloomingdale and to comply therewith. But defendants did not do so. It followed its regular and usual practice, it disregarded the references to the goods of a particular mill." This is not too convincing an argument. If the defendants operated as the plaintiff charged, they would do the very thing they did. A more plausible explanation would be to tell Bloomingdale that Roy Fabrics did not have the Burlington goods as ordered. In fact plaintiff shows by affidavit that two employees of plaintiff visited Bloomingdale Bros., Inc. at the time and found that the goods were Burlington "seconds", which goods the Bloomingdale buyer said had been represented as Burlington first quality goods.

Mr. Halper and Mr. Sussman attempt to explain away the Lansburgh incident by denials, and the suggestion that great pressure exerted by the lawsuit against Lansburgh & Bro. and possible loss of their positions by the three Lansburgh employees are responsible for the affidavits. They seek to cast doubt about the Lansburgh affidavits by referring to a letter sent to defendants by Mr. Gross, the Lansburgh buyer. In the letter Mr. Gross stated that he originally had no intention of using the Burlington name in his advertisements until he found that a neighboring store was advertising inferior goods under Burlington's name. Whatever motivated the Lansburgh people to use the Burlington name in its advertising, the affidavits of the Lansburgh employees in unequivocal terms state that on various occasions when goods were bought

from defendants, Mr. Sussman stated that the goods he was offering were manufactured by Burlington; that Lansburgh could use the Burlington name if it wanted to; that on one occasion (in or about June, 1949) when Mr. Gross had voiced the sentiment that Roy Fabrics, Inc. was attempting to cut the imperfections out of "seconds" and selling them as regular Burlington merchandise, Mr. Sussman assured him that Roy Fabrics, Inc. did not handle "seconds"; that his wife had an uncle who held a big position with Burlington Mills and by reason thereof Mr. Sussman had connections with Burlington which enabled him to get theiir surplus goods which were not "seconds."

Mr. Halper raises the point that if defendants have been using the Burlington name and trading on its good will, buyers at some time would have resorted to plaintiff in connection with claims for breach of warranty or credit for return of fabrics. There are many possible answers to that argument including the possibility that there were such claims—certainly it would appear that there were many complaints—and also that resort to plaintiff was not necessary when amends could be made by the defendants (the actual sellers) as in the Bloomingdale sale.

The defendant Corporation also submits affidavits of strangers to this controversy.

Bradley Roberts of the Denver Dry Goods Company who swore to an affidavit for plaintiff also makes one for the corporate defendant. In his affidavit for plaintiff, he states in part: "By various *Market Rumors and lack of denials on the part* of representatives of Roy Fabrics, Inc., a definite impression was conveyed to me that most of the fabrics were of 'Burlington' manufacture * * *. In addition, all of the aforementioned goods were sold as first quality merchandise, and none of them were designated as 'seconds'." The italicized portion was inserted by Mr. Roberts when he signed the affidavit eliminating the word "innuendos" after "various."

In his affidavit in behalf of the corporate defendant, Roberts asserts that no one con-

nected with the corporate defendant ever represented that the goods in which Roy Fabrics, Inc. traded were Burlington products and he never purchased any as such. He does not deny, however, that the goods of which he had the impression were of Burlington manufacture, were sold as "first" quality and not "seconds."

The corporate defendant also submits affidavits of responsible persons in the business of converting fabrics who state that it is a general, accepted, usual and established practice in the trade for "seconds" to be reprocessed for elimination of defects and subsequently sold as goods of first quality. Included among such persons are Walter Schorr of Fairview Fabrics Corporation of New York and Moe Oltarsh of Oltarsh Fabrics Co. of New York.

In addition, Mr. Lawrence Friedman, buyer for J. Friedman, an owner and operator of stores selling fabrics states that he has dealt with the defendants for four years and they have never represented to him that their goods were of Burlington manufacture, nor that they had any agency or contractual relationship with plaintiff.

Finally the corporate defendant submits a hand-written note from Donald Dickson Shaw who makes an affidavit for plaintiff. The note was mailed from the West. Its significance, if any, lies in the fact that he sympathizes with the defendants; but he did not withdraw the statements made in his affidavit which are most corroborative of plaintiff's contention. In his capacity as a buyer he represented a great many retail stores throughout this country. He stated, among other things, that he became acquainted with Roy Fabrics, Inc. and with Messrs. Sussman and Halper in or about October, 1948; that he had received reports from buyers that Roy Fabrics, Inc. was selling regular Burlington merchandise at 25% less than the price charged for such goods by Burlington; that he made it his business to meet Mr. Sussman to discuss this subject; that Mr. Sussman told him that over 90% of the goods sold by Roy Fabrics, Inc. were produced by Burlington; that he (Sussman) intimated he had a strong "in" with Burlington; that at Mr. Sussman's suggestion

he saw the Burlington people to verify this fact; that he (Shaw) was informed by one of the Burlington executives that the goods sold to Roy Fabrics, Inc. were various rayon print piece goods which had been sold as "seconds" and that it was improper for Roy Fabrics, Inc. to use the Burlington name in connection with the sale of such goods as regular merchandise; that the next day he reported this conversation to Mr. Sussman and "he accused me of being a squealer. He further stated that I was trying to put him out of business and was cutting off my nose to spite my face in turning down a good bargain and spoiling things for all the other buyers. He reiterated that he was selling the goods as first quality merchandise and that even if the goods had been sold to him by Burlington Mills Corporation as 'seconds' he was cutting out the imperfections in such goods and selling the cut pieces as first quality merchandise." The quoted portion above is from the affidavit of Mr. Shaw.

The plaintiff has filed affidavits in reply to those of the defendant corporation with respect to eliminating imperfections in "seconds" and selling them as first quality merchandise. Hilda A. Wiendenfeld, Executive Secretary of The Textile Distributors Institute, Inc., David F. Seiferheld of N. Erlanger, Blumgart & Co., Inc. and Jack Hausman of M. Hausman & Sons, Inc. all state that it is improper to "upgrade" fabrics.

■ A preliminary injunction is a drastic remedy and its issuance rests in the sound discretion of the Court.

■ I am convinced, however, that I should exercise my discretion in favor of part of the relief granted by the plaintiff. It is true that much of the support for the charges against the defendants is contained in the affidavits filed by persons connected with the plaintiff. And these affidavits are replete with hearsay references of conversations with strangers complaining about the defendants' activities. They are entitled to no more weight than the defendants' denials. But it is impossible to avoid the impact of the many affidavits filed in

support of the plaintiff's application by buyers and employees of reputable establishments whose motives are unquestioned. They support to a great extent the plaintiff's claims and their weight is not affected by the defendants' mere denials plus suggestions of ulterior purposes. It is not necessary that the plaintiff prove a case which will entitle it to a decree after trial. Douds v. Wine, Liquor & Distillery Workers' Union, D.C.S.D.N.Y.1947, 75 F.Supp. 184. It is sufficient that the plaintiff show by convincing proof enough to justify what appears to be serious abuses according to the record before the Court. I feel that the plaintiff has presented such proof.

■ The defendants contend that the Court should not decide doubtful questions of law and disputed questions of fact on affidavits.

■ Undoubtedly this is true. In my view, however, the law is not doubtful here and although some facts are in dispute, I shall not take those into consideration in the scope of the injunction. The law is clear that the sale of goods of one manufacturer for those of another is unlawful. Ahmstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Standard Brands Inc. v. Smidler, 2 Cir., 1945, 151 F.2d 34; Yale Electric Corp v. Robertson, 2 Cir., 1928, 26 F.2d 972; Restatement of Torts, Vol. 3, Sec. 711. I believe the papers support the plaintiff's charge in this respect. And this law encompasses the defendants' practice of disposing of the Burlington "seconds" as "firsts." See Cheney Brothers v. Gimbel Brothers, D.C.S.D.N.Y.1922, 280 F. 746.

The defendants further argue that it is the established practice in the fabrics trade for a jobber to buy goods which contain imperfections and after cutting or otherwise eliminating the imperfections, to resell the remaining pieces that are of first quality as its goods of first quality.

Whether this is true or not I am unable to decide. Both sides have annexed affidavits with respect to this practice and they are conflicting and of little help in resolving the issue. I think it is clear as the cases cited indicate, that is not the practice to "upgrade" "seconds" of a particular mill and resell them as "firsts" of that mill.

The defendants further contend that this injunction will drive them out of business, and no bond that the Court might fix will compensate for the incalculable damage they will have suffered if they ultimately prevail.

I cannot believe this. By this injunction I am only requiring defendants to use good business ethics in its transactions; to tell the truth about Burlington goods which they sell. I cannot see how this will harm defendants' business in any way. It may be true that to some extent defendants will be prejudiced in the trade by the issuance of this injunction. That probably follows the issuance of any injunction in matters of business and where business concerns are involved. When the equities are unbalanced I can only come to the one conclusion, however.

The Court must consider the equities on both sides of the matter. It must be remembered that Burlington Mills is a big factor in the field of fabric development and production, and that it has acquired a most favorable reputation in the trade as a producer of high quality goods. It has expended large sums of money and great efforts have been expended in advertising the products of Burlington Mills and its trade names and trademarks which have come to signify in the minds of the trade and of the purchasing public high quality products. The acts of the defendants not only deprive plaintiff of substantial business which normally would come to it but further its valuable property rights in its trade names and trademarks will be impaired and its business relations with various department stores, retail stores and other customers prejudiced with great consequent damage to plaintiff.

The buying public is also entitled to protection. When they purchase Burlington's first grade goods they are entitled to get them and not Burlington's seconds, reprocessed. When they buy Burlington goods

they are entitled to get them and not the product of some other manufacturer. I think these factors far outweigh the possible damage to defendants.

I think the Court should enjoin pendente lite what it is convinced is unfair in defendants' conduct. As I see it, plaintiff's main cause for complaint is (a) that defendants have been selling to the trade goods which they represented as the fabrics manufactured by plaintiff, when as a matter of fact they were not; (b) selling to the trade plaintiff's products as first grade when in fact they were "seconds" which had been reprocessed.

Defendants deny "a". They admit "b" except that they deny that they sold the goods as those of plaintiff.

█ I feel I should not grant in full the injunction asked for here by plaintiff. Plaintiff's motion is granted with respect to requests designated "a", "b", "c", "d", "f" and "g". It seems to me that request "e" is unnecessary in view of request "d".

█ I am not prepared to grant "h". That would be too severe at this time. Defendants are in the business of buying and selling to the trade. It is well established as plaintiff admits that goods may be sold under the brand name or trademark of the marker if the goods are sold in their original form. In the course of business defendants may come into possession of some of plaintiff's goods and they may resell them if they conform to the injunction to be issued herein. As to requests "e" and "h" plaintiff may have the right to renew its application for an injunction to cover these requests if it should become necessary by reason of defendants' manner of doing business in the future. The application may be made upon the moving papers herein and any others which plaintiff may deem necessary.

The plaintiff shall file a bond in an amount to be determined upon the settlement of the order, and the parties shall file memoranda to aid the Court.

Settle order.