SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

F. S. JOHNS & CO., Inc., Diversified
Funding, Inc., Silver Springs Acres, Inc.,
John A. Tricoli, Jr., Lawrence Tricoli
and Joseph Edward Onello, Defendants.

No. C-509-62.

United States District Court
D. New Jersey.

July 26, 1962.

Llewellyn P. Young, Regional Adm'r, and Donald J. Robinson, Atty., S. E. C., John P. Cione, New York City, for plaintiff.

Bernard J. Coven, New York City, for defendants.

SHAW, District Judge.

This matter came on for hearing on the return day of an Order to Show Cause on June 29, 1962, and the Court, after examination of the moving papers and the Affidavits in support thereof, and the Counter-Affidavit of defendant, and after consideration of the arguments of respective counsel, concluded that there was a proper showing of reasonable probability of irreparable injury or harm to the public interest involved, unless, pending final disposition of the litigation, the preliminary restraint sought by plaintiff against all defendants was granted. Accordingly, the Court directed that a preliminary injunction issue and that an appropriate Order be submitted. The temporary restraint directed against all defendants was continued in effect during the interim.

An Order prepared by counsel for the plaintiff was submitted to the Court, and objections of the defendants as to the form and substance of the Order were heard in the presence of counsel for plaintiff on July 3, 1962. The substance of the objections by defendants was that the Order submitted was too broad in scope and went beyond the issues presented. Accordingly, it becomes incumbent upon the Court to set forth its findings of fact and conclusions of law and, in the light thereof, settle the form of the Order. The temporary restraint remains in effect subject to such further Order of the Court.

The corporate defendants are hereinafter designated as follows: The defendant F. S. Johns and Co., Inc., as "F. S. Johns"; the defendant Diversified Funding, Inc., as "Diversified"; and the defendant Silver Springs Acres, Inc., as "Silver Springs."

The following allegations of plaintiff, supported by an Affidavit of Joseph Nello, an investigator employed by the plaintiff, are not controverted by any factual statements in the Affidavit of John A. Tricoli, Jr. (the only Affidavit filed on behalf of defendants), and will be deemed admitted for the purpose of this motion:

1. Defendant F. S. Johns is a corporation incorporated under the laws of the State of New Jersey, and it maintains its principal place of business at 1994 Morris Avenue, Union, New Jersey. Since August 21, 1960, this corporation has been registered with the Securities and Exchange Commission pursuant to the provisions of Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. 78j(b), as a broker and dealer in securities.

2. The defendant Diversified is a corporation incorporated under the laws of the State of New Jersey on January 24, 1961, and it maintains its principal place of business in a basement office located on the premises of F. S. Johns at 1994 Morris Avenue, Union, New Jersey. As of March 31, 1962, according to the First Quarter Report for that year of its operations, there were 255,680 shares of common stock and 36,720 shares of preferred stock outstanding.

3. Defendant Silver Springs is a corporation incorporated under the laws of the State of New Jersey and also maintains its principal place of business in the same basement office used by Diversified on the premises of F. S. Johns at 1994 Morris Avenue, Union, New Jersey. Silver Springs is engaged in the business of promoting and selling an undeveloped tract of 630 acres of land in the State of Florida. On or about March 6, 1962, defendant Joseph Edward Onello and the two other holders of all the outstanding 4,000 shares of Silver Springs common stock exchanged their stock for 181,200 shares of the common stock of Diversified whereby Silver Springs became a wholly-owned subsidiary of Diversified.

4. Defendant John A. Tricoli, Jr., is the president and a director of F. S. Johns, the vice-president and a director of Diversified, and, since on or about March 6, 1962, has been the treasurer and a director of Silver Springs. Defendant John Tricoli is a resident of the State of New Jersey. During the period in question, John Tricoli held substantial blocks of Diversified common stock having acquired 30,000 shares on February 15, 1961, as a promoter for the consideration of ten cents per share. These shares were transferred to F. S. Johns on or about September 6, 1961. An additional 70,000 shares were acquired by John Tricoli for one cent per share from defendant Onello on or about March 6, 1962, the same date they were acquired by Onello in the Diversified-Silver Springs transaction.

5. Defendant Lawrence Tricoli, the brother of the defendant John A. Tricoli, Jr., is the president and a director of Diversified, a securities salesman employed by F. S. Johns and, since on or about March 6, 1962, has been the secretary and a director of Silver Springs. He acquired 10,000 shares of the common stock of Diversified as a promoter on February 15, 1961, for the consideration of ten cents per share. This defendant is a resident of the State of New Jersey.

6. Defendant Joseph Edward Onello was the promoter and has been the president and a director of Silver Springs since its incorporation. He has been the secretary

and a director of Diversified since on or about March 6, 1962. He, his wife, Evelyn Onello, and one other person transferred all the outstanding stock of Silver Springs to Diversified and, in exchange, they received 181,200 shares of the common stock of Diversified. This defendant is a resident of the State of New Jersey.

7. On or about January 24, 1961, Diversified commenced a public distribution to residents of the State of New Jersey of 25,000 units of its securities at $5 per unit, each unit consisting of three shares of preferred and two shares of common stock. This offering was terminated on or about September 21, 1961.

8. During the public distribution above mentioned between January 24, 1961, and September 21, 1961, F. S. Johns, acting as underwriter, offered and sold the aforesaid units of Diversified stock to residents of the State of New Jersey and, since on or about September 21, 1961, to date, F. S. Johns has been offering and selling stock of Diversified to residents of the States of New York and New Jersey, and trading, common and preferred stock of Diversified. During the underwriting, F. S. Johns received from public investors approximately $60,000 in sales, of which approximately $49,000 was remitted to Diversified.

9. Subsequent to September 21, 1961, the books and records of F. S. Johns reflect, in addition to purchases of a substantial amount of the common stock of Diversified from members of the investing public and other brokers and dealers, that the following acquisitions of the common stock of Diversified were made:

| Date | Amount | Source |
|------|--------|--------|
| 9/26/61 | 30,000 shares | John Tricoli |
| 3/9/62 | 19,451 shares | Conversion of Preferred |
| Total | 49,451 shares | |

F. S. Johns had a long position of only 11,771 shares of Diversified common stock as of May 11, 1962, the balance of its acquisitions having been sold to members of the public and other brokers and dealers at prices ranging between 1⅜ to 5⅛.

10. The customers of F. S. Johns who purchased the stock in the original underwriting received in the mails the Diversified offering brochure dated January 24, 1961, copy of which is attached to the Affidavit of Joseph Nello. This brochure was prepared by the defendant John A. Tricoli, Jr., and its use authorized by the officers and directors of Diversified and F. S. Johns. Some of the customers of F. S. Johns who purchased stock after the original underwriting received sales literature, copies of which are attached to the Affidavit of Joseph Nello and identified as Exhibits 2, 3a, b, and c, and 4.

11. Exhibit 2 is a copy of the 12-page First Quarter Report for 1962 of Diversified prepared by defendants John A. Tricoli, Jr., and Joseph Edward Onello. Five thousand copies of this report were printed during April 1962 for distribution to shareholders and to brokers and dealers located in New Jersey and New York and to potential purchasers. Exhibits 3a, b, and c, annexed to the Affidavit of Joseph Nello, each entitled "Special Research Report," are pieces of sales

literature prepared and disseminated by defendants John A. Tricoli, Jr., and F. S. Johns in connection with the offer and sale of Diversified stock. Exhibit 4 annexed to the affidavit of Joseph Nello entitled "Formula for Success" is another piece of sales literature prepared by defendants John A. Tricoli, Jr., and F. S. Johns. Five hundred copies were printed on or about February 23, 1962, 200 copies were printed on or about March 21, 1962, and 250 copies were printed on or about March 22, 1962.

12. The United States Mails were directly and indirectly used by the defendants to mail literature for the purpose of the sale of Diversified stock, for confirmations of purchases of Diversified stock, and were also used by purchasers to transmit checks in payment for Diversified stock which was purchased.

Defendants take issue with respect to further allegations of plaintiff supported by the Affidavit of Joseph Nello and by the Affidavits of purchasers of stock of Diversified annexed to the moving papers. They rely on the Affidavit of defendant John A. Tricoli, Jr. Some of plaintiff's allegations are denied generally. As to others, it is stated that plaintiff does not quote accurately from literature of Diversified; that portions of such literature are quoted out of context; and that plaintiff fails to state all material facts, relating to the operations of Diversified, which are necessary to present a true picture of its capitalization, earnings, and operations.

Plaintiff quotes an excerpt from Diversified's offering brochure dated January 24, 1961, the purport of which is that defendant Diversified *is* "engaged in the business of financing, managing, and promoting the expansion of small qualifying industrial plants." The statement contained in this brochure reads as follows:

"The Company *will be* engaged principally in the business of financ-

ing, managing and promoting the expansion of small qualifying industrial plants. The Company, being newly organized, has not as yet started its operations." (Emphasis supplied.)

Defendants, however, have not demonstrated, as far as the record discloses, that Diversified ever did engage since incorporation in the business of financing, managing and promoting the expansion of small qualifying industrial plants, and, considering the lapse of time and the subsequent statements in other literature relating to the earnings and operations, the continuing forecast of its intention to engage in such business, without any affirmative action to give the same effect, could well be considered at this time as misleading.

In the piece of literature entitled "Formula for Success" recently prepared and disseminated as part of the sales effort to sell Diversified stock, it is stated:

"The Company's revenues accrue from profits and capital gains realized on the sale of corporate equities, acquired at book value from companies that have been extended interim financing by DIVERSIFIED FUNDING, INC., and from dividends and/or gains realized on equities acquired in the open market."

Plaintiff relates that Diversified has not acquired corporate equities at book values or otherwise; that no companies have been extended interim financing by Diversified; that Diversified actually suffered losses; and that the only equities acquired by Diversified were not acquired on the open market but were sold to it by F. S. Johns from its own portfolio account. This is not refuted by any factual statements in the Affidavit filed in behalf of defendants.

Plaintiff states that the quarterly report of Diversified for the first quarter of 1962 (Exhibit 2 attached to the Affidavit of Joseph Nello) contains the

following false and misleading statements:

"1. A current asset item in the amount of $15,011 is set forth in the Balance Sheet as 'Cash in Transit' whereas in fact the item represents money due from real estate contracts purportedly signed between March 7 and March 31, 1962, of which sum less than $2,000 has actually been received to recent date.

"2. A current asset item entitled 'Installments Contract Receivable' in the amount of $106,136.43 is reflected in the Balance Sheet as a 'Current Receivable' item whereas in fact only a portion is a current item as the amounts are receivable over a total period of seven years.

"3. A current asset item of 'Improvements' in the amount of $25,000 is set forth in the Balance Sheet whereas in fact the actual amount spent on improvements is less than $2,500.

"4. An improper capital item is set forth in the Balance Sheet as 'Unrealized Profits, Balance as at December 31, 1961,' in the amount of $23,192.78, whereas in fact as at December 31, 1961, Diversified had suffered a realized loss from operations.

"5. An improper capital item is set forth as 'Unrealized Profits, Balance for Quarter ending March 31, 1962' in the amount of $49,523.10, whereas in fact Diversified had suffered a realized loss from operations during the first quarter of the year 1962.

"6. An Income Statement item of 'Earnings Per Share (Estimated prior to taxes)' in the amount of $0.17 is set forth, whereas Diversified had sustained a loss for that period.

"7. A statement that Fidelity Registrar and Transfer Corporation was the registrar and transfer agent for Diversified is set forth whereas, in fact, F. S. Johns was and is the registrar and transfer agent."

The defendants do not deny the fact that, of the $15,011 set forth in the Balance Sheet as cash "in transit," less than $2,000 has actually been collected to recent date. There is no explanation for the delay in receipt of the money and, in the absence of explanation, it may be inferred that it was not an item of cash in transit in the sense that such a description of it would be generally understood. Defendants attempt to justify their characterization of this item in the Balance Sheet by a footnote which reads:

"In transit income is due from contracts signed and *checks due at the time of report.*" (Emphasis supplied.)

The footnote does not indicate that immediate receipt of cash in the amount of $15,011 could not be anticipated. In fact, it suggests that it is money collectible by "checks due at the time of report," emphasizing the unqualified character of the cash asset in transit.

The Balance Sheet sets forth, under Current Assets, the amount of $106,136.43, described as "Installments Contract Receivable." This item is not qualified by any footnote, and it is not denied that it represents money to be collected in part over a total period of seven years. The inclusion of it in the Current Asset items of the Balance Sheet, without explanatory comment as to what it actually represents in contract money due and payable over a period of years, is likely to be misleading to a prospective purchaser of stock evaluating the nature of the asset as it is set forth in the Balance Sheet.

In the Asset column of the Balance Sheet, the cost of acquisition of real estate is stated to be $125,000, and improvements thereon are evaluated at $25,000. The fact that defendant Joseph Edward Onello purchased the real estate for $66,000 is not denied, and defendants do not come forth with any factual statements to justify the alleged

appreciation, other than to state that "The value was placed upon said land by Mr. Onello when he sold the same to Silver Springs." Defendants do not attempt to refute the statement of plaintiff that the actual amount spent on improvements is less than $2,500, nor do defendants allege factually that improvements having a value of $25,000 actually existed. They merely state that the term "Improvements" as set forth in the Balance Sheet "does not carry the import that the same was paid for by Silver Springs prior to its merger or by Diversified thereafter."

The Balance Sheet sets forth a capital item of "Unrealized Profits, Balance as at December 31, 1961," in the amount of $23,192.78. Defendants do not deny that, as of that date, Diversified had suffered a realized loss from operations. They state, however, that plaintiff omits reference to the fact that this item appears in a consolidated balance sheet which entitled defendant Diversified to combine report of operations of Diversified with operations of Silver Springs, even though the acquisition of Silver Springs by Diversified did not occur until on or about March 6, 1962. Assuming that this was a valid explanation, defendants still do not state any facts to show that the combined assets of the two corporations, considered retroactively, would justify the statement of unrealized profit in the amount of $23,192.78 as of December 31, 1961.

In regard to the alleged false statement of "Unrealized Profits for the quarter ending March 31, 1962" in the amount of $49,523.10 and the alleged false statement of "Earnings Per Share (Estimated prior to taxes)" in the amount of $.17 per share, defendants contend that plaintiff fails to take into consideration that the Balance Sheet, as of March 31, 1962, is the consolidated Balance Sheet of defendants Diversified and Silver Springs. It is described in the quarterly report as a "Consolidated Balance Sheet for the Quarter Ended March 31, 1962," and it may be assumed that, since Silver Springs is a wholly-owned subsidiary of Diversified, the profits and earnings of Silver Springs would constitute assets of Diversified and be reflected in the balance sheet of Diversified as of March 31, 1962. Accordingly, if it were shown that the consolidated assets, profits, and earnings were correctly reported in the Consolidated Balance Sheet, there would be some merit to the contentions of defendants on this point. There is nothing, however, in the Affidavit of defendant John A. Tricoli, Jr., to demonstrate that, even on the basis of a consolidated balance sheet, the reported items of Unrealized Profits or earnings per share of Diversified were correct statements. Nor is there any direct contradiction of the fact that Diversified actually suffered a loss for the period in question.

The fact that Fidelity Registrar and Transfer Corporation was not the registrar and transfer agent for Diversified as stated in the quarterly report is not denied. Defendants' only argument with respect to this is that the untrue statement is not material because the stock certificates indicated the correct name of the transfer agent and the place where transfer could be made. It would seem, however, that the fact that F. S. Johns, and not Fidelity Registrar and Transfer Corporation, was actually the transfer agent would not come to the attention of a purchaser of stock until after sale was consummated and the stock certificate delivered.

The "Special Research Report" indicated that there were several projects "now in negotiation nearing completion" which would make it possible to project earnings of between 45 cents and 50 cents a share within six months and that additional income would also be available from the "Stock and Stock Options we are obtaining." The "Formula for Success" bulletin also forecasts that "highly profitable results are projected for this calendar year" (1962). Defendants do not attempt to justify these statements, except to say that they are not misleading because they relate to matters in the future; that the Special

Research Reports have been discontinued; and that there is no evidence that anyone has actually been misled by the representations made.

The representation is made in the "Formula for Success" bulletin, 450 copies of which were printed on March 21 and March 22, 1962, that there were 135,000 shares of the common stock of Diversified outstanding. The fact that there were actually 255,608 shares of common stock outstanding and 50,000 common stock purchase warrants also outstanding is not denied by defendants. They take the position that the omission to state the correct number of shares outstanding and to disclose the common stock purchase warrants outstanding was inadvertent and that, because the additional outstanding common stock was investment stock, there was little or no danger of any member of the public being misled. It is further stated by defendants that, of the 50,000 common stock purchase warrants then outstanding, none have ever been executed. But what obligation, if any, Diversified had or still has with respect thereto is not disclosed.

In connection with the representation as to the total number of shares outstanding, it is interesting to note that, in the same bulletin where this report is made, the following statement appears:

"With the small number of shares outstanding, there are factors inherent in computing net earnings that are very bullish for the stock."

There is further emphasis in the language of this bulletin upon the wisdom of purchasing stock in a company "where the vigorous growth in earnings is combined with a small number of shares outstanding."

There is general denial of the oral representations made to purchasers in the sale of Diversified stock as set forth in the Affidavits of Harold Dentsman, George Gianoudis, August Buchner, Martin Munnich, Harry Hoffman, Florence White, and Jack Hughes, each of whom had been solicited for the purchase of stock of Diversified. The factual statements and alleged representations made, related in these Affidavits, are detailed, and it would seem that defendants should be in a position to meet these statements under oath with something more than a general blanket denial by Affidavit of John A. Tricoli, Jr., who, as far as the Affidavits disclose, was not the salesman in each of the transactions to which the statements in the Affidavits refer. It does not appear that he was present at the time of the making of the alleged misrepresentations by salesmen employed by F. S. Johns, and his competence to deny that such representations were actually made is open to question.

Defendants state that the defendant John Tricoli was not fairly quoted when it was alleged that he had testified that a financial statement was intentionally omitted from the offering brochure dated January 24, 1961, because "the finances of the company at that time were so poor * * * that we thought it necessary to leave the financial statement out." The complaint with this quote is that it indicates an omission. But beyond the mere statement that it is not a complete quote, defendants say nothing which would supply the omission or which would refute the implication of the statement.

Defendants do not deny that a reported asset item of "Negotiable marketable Securities (at cost)—$36,060.28" was set forth in the quarterly report for the first quarter of 1962 when, in fact, the market value of these securities was $29,862.50. They merely allege that, unless there is drastic change in the value of such securities, it is proper accounting practice to report them as assets *at cost*, regardless of market value.

It is not denied in connection with representations of the "aggressive and proven management" of Diversified that there was no disclosure to prospective purchasers of stock of the fact that no member associated with management of Diversified's affairs had prior experience in the field of operations in which it was

represented to be engaged, except for the land development project of Silver Springs with respect to which Joseph Edward Onello is generally alleged to have had great experience. No factual detail as to this experience is furnished. Nor was there any disclosure that Diversified has not and does not employ any full-time employees.

While stock of Diversified was being sold to the public at prices of approximately $4.25 to $5.25 per share, there was no disclosure that, on March 6, 1962, defendant Joseph Edward Onello received payment of one cent per share for 70,000 shares which he sold to the defendant John Tricoli. Defendants answer this allegation of the plaintiff by stating that it was a private transaction concerning matters of control and only involved investment stock.

The allegations of plaintiff, supported by Affidavits under oath, are detailed and specific. In contrast, the statements in the Counter-Affidavit of John A. Tricoli, Jr., on behalf of defendants, are not impressive, and it is the opinion of the Court that there is no substantial refutation by the statements in this Affidavit of the charges made by plaintiff.

The financing of a corporate enterprise by the sale of stock to the public is a fertile field for the practice of deception. The purchaser receives a piece of paper for his investment and must rely in large degree, as to the worth of it, upon representations made with respect to the nature and value of the interest he has acquired in the corporate business. The need for regulatory measures, and for the observance of high standards of scrupulous conduct in this field for the protection of the public interest, has long been recognized by statutory intervention (Securities Act of 1933, 48 Stat. 74) and by case law dealing with the elements of fraudulent conduct in the sale of securities. Hall v. Geiger-Jones, 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480 ₍1917₎; Charles Hughes & Co. v. Securities & Exchange Commission, 139 F.2d 434 (2d cir. 1943); Foshay v. United States, 68 F.2d 205 (8th cir. 1933),

cert. den. 291 U.S. 674, 54 S.Ct. 531, 78 L.Ed. 1063 (1934).

The standards of conduct prescribed for this type of business cannot be whittled away by the excuse that false statements made were inadvertently made without intent to deceive, or by reliance upon the literal truth of a statement which, in the light of other facts not disclosed, is nothing more than a half-truth. Nor may refuge be sought in the argument that representations made to induce sale of stock dealt merely with forecasts of future events relating to projected earnings and the value of the securities, except to the extent that there is a rational basis from existing facts upon which such forecast can be made, and a fair disclosure of the material facts. The element of speculation is inherent in stock investments, but the investor is entitled to have the opportunity to evaluate the risk of loss, as against the hope of a lucrative return, from true statements of the financial status of the corporate enterprise in which he is acquiring an interest.

Plaintiff alleges that the acts of defendants constitute violations of Section 17(a) of the Securities Act of 1933, as amended, 15 U.S.C.A. § 77q(a). Jurisdiction to grant the relief sought by plaintiff is conferred by Section 22(a) of the Act, 15 U.S.C.A. § 77v(a). It is not necessary in this proceeding that plaintiff establish a case which will entitle it to a final decree after trial. Burlington Mills Corp. v. Roy Fabrics, Inc., 91 F.Supp. 39 (S.D.N.Y.1950), aff'd 182 F.2d 1020 (2d cir. 1950). It is sufficient to invoke the relief sought that there be a proper showing, to the satisfaction of the Court, of reasonable cause to believe that violations of the Act have been committed and that, unless defendants are enjoined from further violations, there will be probably irreparable injury to the public interest involved. Douds v. International Longshoremen's Association, 242 F.2d 808 (2d cir. 1957); Federal Trade Commission v. Rhodes Pharmacal Co., 191 F.2d

**574**

744 (7th cir. 1951); Henderson v. Burd, 133 F.2d 515, 146 A.L.R. 714 (2d cir. 1943); Burlington Mills Corp. v. Roy Fabrics, Inc., supra; Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42 (4th cir. 1932).

 The Court finds, upon consideration of the proofs, to its satisfaction that there is reasonable basis to believe that, for the purpose of the sale of the securities of defendant Diversified Funding, Inc., and to induce purchasers to buy such securities, the defendants, acting in concert together and in furtherance of common interest, used the United States Mails and did make untrue statements of material facts as to:

(a) The outstanding capital stock of Diversified;

(b) The earnings of Diversified;

(c) The forecast of future earnings and value of stock of Diversified;

(d) The operations in which Diversified was engaged and in which it intended to engage;

(e) The value of the assets of Diversified;

(f) The registrar and transfer agent of Diversified.

The Court further finds, in connection with the representations made or caused to be made by defendants to induce the public to purchase stock of Diversified, that they failed to disclose, when making such representations, material facts that it was necessary to disclose in order that the representations as to capitalization, assets, earnings, operations of Diversified, and future benefits that would accrue to stockholders, would not be misleading.

In accordance with its findings of fact, it is the opinion of the Court that a preliminary injunction should issue. The Court is also satisfied that each of the defendants named herein, who are before the Court by service upon them of the Order to Show Cause, participated directly and indirectly in the violations above mentioned and that the preliminary restraint should be directed against each of them.

An appropriate Order will be submitted in accordance herewith.