SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

BENNETT & COMPANY, Bennett Davies
and Frederick Davies, Defendants.

Civ. A. No. 411–62.

United States District Court
D. New Jersey.

Aug. 13, 1962.

William Lerner and Andrew N. Grass,
Jr., Securities and Exchange Commis-
sion, New York City, for plaintiff.

Samuel H. Berlin, Newark, N. J.,
Edward S. Joseph, New York City, for
defendants.

AUGELLI, District Judge.

This matter is before the Court on motion of the plaintiff Securities and Exchange Commission ("SEC") for a temporary injunction and the appointment of a receiver. This relief is sought pursuant to section 20(b) of the Securities Act of 1933, as amended ("Act"), 15 U.S.C.A. § 77t(b), and jurisdiction is invoked under section 22(a) of the Act, 15 U.S.C.A. § 77v(a).

Defendant Bennett & Company is a partnership and is registered with SEC as a broker-dealer in securities; defendant Bennett Davies is the sole general partner of said Company; and defendant Frederick Davies is the 22 year old son of Bennett Davies, employed by Bennett & Company as a securities salesman. Frederick is also secretary-treasurer and a director of Financial Development Corporation ("FDC"), and the owner of 40% of the Class B (voting) common stock of that corporation.

These defendants are charged with a violation of section 17(a) of the Act, 15 U.S.C.A. § 77q(a). An order, temporarily restraining defendants from engaging in the alleged unlawful activity and from disposing of any assets of FDC or Bennett & Company, was entered on May 21, 1962. By consent, the restraining order was continued in force, pending determination of plaintiff's motion. The matter was subsequently argued and a number of affidavits have been filed by the parties.

The complaint alleges that since on or about March 27, 1962, defendants have been offering for sale and selling Class A shares of FDC by use of means and instruments of transportation and communication in interstate commerce and by the use of the mails; that in the offers and sales of such shares, defendants made untrue statements of material facts concerning the security, and also omitted to state material facts that should have been disclosed to prospective purchasers of the stock; that by reason of such untrue statements and omissions of material facts, purchasers of the stock have been defrauded; and that unless enjoined, defendants will continue their unlawful practices. In addition to injunctive relief, plaintiff asks for the appointment of a receiver of the assets of Bennett & Company under the control or in the possession of the defendants.

The affidavits filed in this case disclose the following:

FDC was incorporated under the laws of the State of New Jersey on March 26, 1962, for the purpose of carrying on the business of making loans to builders and contractors engaged in the construction of housing, principally in Ocean and Monmouth Counties, and investment in and development of real estate. It has an authorized capitalization of 1,000,000 shares of Class A common stock, par value $.01 per share, with no voting rights, and 1,000 shares of Class B common stock, par value $1.00 per share, with voting rights. Of the Class B stock, 450 shares are owned by defendant Frederick Davies; 450 shares by Jacob Edelstein; and the remaining 100 shares by Florence Pattyson. Jacob Edelstein is in the building construction and real estate development business. He is the president and a director of FDC. Florence Pattyson is a limited partner of Bennett & Company, and a director of FDC.

The idea of engaging in the business for which FDC was ultimately formed appears to have originated with Frederick Davies and Jacob Edelstein. They discussed the proposed venture with Edelstein's two brothers, E. Alexander Edelstein and Benjamin Edelstein, members of the Bar of this State, practicing law under the firm name of Edelstein & Edelstein. E. Alexander Edelstein appears to be the law partner who took an active interest in this matter. He attended to the incorporation of FDC and advised his clients with respect to the capitalization of the corporation, classification of its stock, the need for an offering circular, and so forth.

On or about March 27, 1962, FDC commenced a distribution of 225,000

shares of its Class A non-voting common stock to residents of New Jersey, at an offering price of $1.00 per share, with Bennett & Company acting as sole underwriter on a "best efforts" basis.

On April 5, 1962, FDC acquired, at no cost, two options for the purchase of undeveloped real estate. One property, subject to a 60 day option, was to cost $40,000.00, plus interim survey costs. The second property, subject to a 45 day option, was to cost $35,000.00. This property was owned by a corporation, all of the stock of which was wholly owned by Jacob Edelstein and members of his family. In the absence of a contrary indication in the record, it is assumed that neither option was exercised.

As of May 1, 1962, the records of Bennett & Company reflected that 73,175 shares of Class A non-voting common stock of FDC had been sold, and that 57,125 shares had been paid for. Bennett & Company has retained for itself, on each share sold, the sum of $.24, representing commission and service charges. In addition to these sales, options to purchase Class A shares of FDC are held by Bennett & Company and the officers and directors of FDC.

SEC alleges that during the course of the distribution and subsequent trading of FDC Class A stock by Bennett & Company, offers to sell were made over the telephone by Frederick Davies and others in the employ of Bennett & Company, under the supervision of Bennett Davies. Some of the purchasers of the stock were past customers of Bennett & Company. It is stated that false and misleading statements of material facts were made in connection with the offer and sale of FDC stock, and also that certain material facts relating to FDC were not disclosed to prospective purchasers of the stock. An offering circular, which allegedly was not mailed to purchasers until after a sale had been consummated, appears to contain a full disclosure of the highly speculative nature of the offering, and sets forth the material facts which SEC claims were omitted in the telephone solicitations.

SEC has filed with the Court a number of statements it procured from purchasers of FDC stock from Bennett & Company. In substance, these and other statements hereinafter referred to, indicate the nature of the alleged misrepresentations and omissions of material facts.

One purchaser claims he was told by Frederick Davies that the stock could be "expected to double its income within 180 days"; and that "it would possibly double or triple in value in possibly 180 days".

Another purchaser says he was told by Frederick Davies that Davies thought the price of FDC stock "would double in value within six months to a year". This purchaser also claims that when he bought his stock he was not told he was getting Class A non-voting stock of FDC, nor that Frederick Davies and Florence Pattyson owned Class B voting stock, nor that these people were principals in both Bennett & Company and FDC. He learned about this situation only after receiving the offering circular, which was subsequent to his purchase of the stock.

In another instance, a woman was told by a Bennett & Company salesman that FDC stock "would at least triple in a couple of months or so". This purchaser was not told that she was getting non-voting Class A stock, nor that Frederick Davies and Florence Pattyson were officers of FDC and owners of its Class B voting stock, nor that Davies and Pattyson were principals in Bennett & Company and in FDC. The offering circular, which would have disclosed these and other facts, was not received by this purchaser until a month after the purchase.

In another statement, a woman relates that Frederick Davies told her that "he expected the value of the stock to go up"; and that FDC "was in the financing business" in Ocean County. She says that no mention was made to her regarding any voting rights of the stock, nor was she told that Frederick Davies owned any stock or controlled FDC. This woman also claims she did not receive the offer-

ing circular until after her purchase. Frederick Davies has filed an affidavit to which he attaches a later dated statement from the same woman, who now states that Frederick Davies "did not say that the stock would *definitely* go up", and that she felt she "was properly informed enough" to make the purchase.

Another investor, in his statement to SEC, claims he was told by Frederick Davies that FDC "was an up and coming company; it was a good thing; it would go up to $3.00 a share in a matter of six months * * *." Nothing was said concerning Davies' connection with FDC, nor was the prospect told anything about voting rights. At no time did this purchaser receive an offering brochure or any literature describing FDC. However, in another statement, submitted by Frederick Davies, this same investor says his dealings with Frederick Davies and Bennett & Company were always satisfactory, and that he was "not pressured" into buying FDC stock.

In addition to the two statements above mentioned, Frederick Davies has produced four others from purchasers of FDC stock. Summarized, the statements say that no high pressure salesmanship was used; that the speculative nature of the investment was known to the purchasers; that purchases of the stock would have been made regardless of Davies' interest in FDC; and that no guarantees were made with respect to the future of the stock. It is noted that in none of the statements submitted by Davies is there any indication that the purchasers of FDC stock were in possession of the offering circular at or prior to the time the purchases were made. Moreover, none of these statements negative the allegations made by SEC regarding the failure to disclose material facts to prospective purchasers of the stock, to wit: that Frederick Davies was an officer, director, promoter and a principal stockholder of FDC; that he was in the employ of the underwriter, Bennett & Company; that the Class A shares of FDC being offered had no voting rights; that FDC had not yet established

permanent offices; and that FDC had as yet no operating history.

The affidavit of Frederick Davies states that the sum of $42,373.40, representing proceeds of the sale of FDC stock, is now being held in escrow by E. Alexander Edelstein. It is said that these funds comprise all of the assets, capital and property of FDC and its stockholders, and that Bennett & Company has no interest therein and makes no claim thereto. It may be, however, that Bennett & Company has received additional payments for stock sold since these figures were determined. As stated earlier in this opinion, the defendants, by this Court's order of May 21, 1962, were, *inter alia,* restrained from disposing of any assets of FDC or Bennett & Company.

In their affidavits, defendants emphatically deny any improper or unlawful conduct in the offer and sale of FDC stock. It is alleged there was no offering of the stock to the general public. It is claimed offers to sell were made only to a small number of the clientele of Bennett & Company, all of whom were residents of New Jersey. The making of any misrepresentations of material facts or omitting to state such facts with respect to FDC or its stock is denied.

This, then, might be said to be the case confronting the Court on the motion for a temporary injunction and appointment of a receiver.

Section 17(a) of the Securities Act of 1939, as amended, 15 U.S.C.A. § 77q(a), provides:

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in

order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

■ Defendants challenge the applicability of this section to the case at bar because of the completely intrastate character of the transactions involved. It appears that all solicitations for the sale of the stock were made by intrastate use of the telephone. It also appears that the mails were used by defendants in transmitting confirmations of purchases, in sending out copies of the offering circular, and by the purchasers of the stock in remitting checks in payment therefor. It is clear that such use of the mails, even though wholly within the State of New Jersey, is sufficient to give this Court jurisdiction under the quoted antifraud provisions of the Act. Securities and Exchange Commission v. Timetrust, Inc., 28 F.Supp. 34 (N.D.Cal.1939); United States v. Monjar, 147 F.2d 916 (3 Cir. 1944); Northern Trust Co. v. Essaness Theatres Corp., 103 F.Supp. 954 (N.D.Ill.1952).

■ In addition to the foregoing, the Court is satisfied that the misrepresentations and omissions alleged to have been made by the defendants would constitute a violation of section 17(a) of the Act. However, the Court is not required at this time to finally determine the issues of fact or the issues of law involved in the case. It is enough if plaintiff makes out a sufficient prima facie case to justify the discretionary issuance of a temporary injunction. See Bowles v. Montgomery Ward & Co., 143 F.2d 38 (7 Cir. 1944); Burlington Mills Corporation v. Roy Fabrics, 91 F.Supp. 39 (S.D.N.Y. 1950); Federal Trade Commission v. Rhodes Pharmacal Co., 191 F.2d 744 (7 Cir. 1951); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2 Cir. 1953); Securities and Exchange Com-

mission v. Boren, 283 F.2d 312 (2 Cir. 1960).

Section 20(b) of the Act, in pertinent part, reads as follows:

"Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, it may in its discretion, bring an action in any district court of the United States, * * * to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond."

Thus, the test laid down for injunctive relief is whether or not "a proper showing" of the need therefor has been made.

Professor Loss, in Securities Regulation, Vol. III, p. 1979 (2nd Ed. 1961), states that:

"Since SEC injunctions are creatures of statute, all that must be established is what the statute requires, without reference to proof of irreparable injury or the inadequacy of other remedies as in the usual suit for injunction" (Footnotes omitted).

■ Once the Court determines that SEC has presented a sufficient prima facie showing that defendants' past conduct constitutes a violation of the Act, another test must be applied, and that is, whether or not such past conduct indicates a reasonable likelihood of further violations in the future. And, of course, the voluntary discontinuance of the alleged unlawful activity in the face of SEC action would be no bar to injunctive relief in a proper case. Securities and Exchange Commission v. Torr, 87 F.2d 446 (2 Cir. 1937); Securities and Exchange Commission v. Universal Service Association, 106 F.2d 232 (7 Cir. 1939); Securities and Exchange Commission v. Okin, 139 F.2d 87 (2 Cir. 1943); Securities and Exchange Commission v. Cul-

pepper, 270 F.2d 241 (2 Cir. 1959); Securities and Exchange Commission v. Scott Taylor & Co., 183 F.Supp. 904 (S. D.N.Y.1959).

■ On the basis of the present record, this Court is satisfied that SEC has made out a sufficient prima facie case against all three defendants. The relationship among the parties and FDC cannot be ignored. Bennett Davies and his son Frederick deny any wrongdoing. But both appear to have been actively engaged in the offer and sale of FDC stock by means which are alleged to have been in violation of the anti-fraud provisions of the Securities Act of 1933. As previously stated, it is not necessary for the Court to make a final determination of the facts, or to resolve the issues of law, at this time. Enough has been shown concerning defendants' past conduct to indicate a reasonable likelihood of further violations of the Act in the future. Under the circumstances, and pending a determination of a hearing of the case on the merits for a permanent injunction, the motion for a temporary injunction will be granted.

The language of the temporary injunction should follow that used in the "ORDERED" paragraph beginning on page 3 and ending on page 4 of the temporary restraining order dated May 21, 1962. There should be included a provision restraining defendants from directly or indirectly transferring, selling, assigning, pledging or otherwise disposing of all or any part of the assets of FDC, or of Bennett & Company acquired in connection with the sale of FDC stock, presently in their possession or control or which, in the future, may come into their possession and control, until the further order of this Court.

The application of SEC for the appointment of a receiver will be denied. The Court is asked to appoint a "receiver of all assets and property of or belonging to Bennett and Company under the control or in the possession of the defendants, and authorizing, empowering and directing such receiver to investigate, seize and marshal such assets and proper-

ties wherever they may be found, and to hold the same subject to the further order of this Court".

In support of this requested relief, SEC alleges defendants now have assets in their possession "which they may transfer, sell, assign, pledge or otherwise waste or dissipate so as to disable them from satisfying judgments that might be obtained against them by their defrauded customers and so as to cause immediate and irreparable loss and damage to persons to whom money or securities are owing * * *."

■ The law is now clear that under section 22(a) of the Act, 15 U.S.C.A. § 77v(a), this Court has the power to appoint a receiver in a proper case. Los Angeles Trust Deed & Mortgage Exchange v. Securities and Exchange Commission, 285 F.2d 162 (9 Cir. 1960); Securities and Exchange Commission v. H. S. Simmons & Co., 190 F.Supp. 432 (S.D.N.Y.1961); Loss, Securities Regulation, Vol. III, pp. 1508–14 (2nd Ed. 1961). The cited cases involved corporations alleged to be insolvent. In both cases, a receiver was appointed to preserve the status quo and to prevent further diversion of corporate assets.

In the present case all of the money realized from the sale of Class A FDC stock (exclusive of the $.24 a share retained by Bennett & Company) is being held in escrow by a member of the Bar of this State with the consent of SEC. No claim thereto is being asserted by any of the defendants. There is no allegation here that Bennett & Company is insolvent, nor is there any indication of such condition. There is no evidence that any of the defendants have in the past diverted any funds belonging to others to their own use. There is only a bare allegation that this "may" happen. Any additional moneys collected by defendants from a sale of FDC stock will be safeguarded by appropriate language, as heretofore suggested, in the temporary injunction.

■ Under these circumstances, and with due regard to the amount of money

involved and the escrow arrangement presently in effect, the Court does not feel, on the basis of the present record, that a receiver should be appointed for Bennett & Company.

This opinion shall constitute findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. SEC is directed to submit an appropriate order, on notice to defendants, in conformity herewith.